Good morning, Your Honors. Todd Blondell on behalf of Appellant CSI Electrical Contractors Inc. I'm going to try to reserve three minutes of my time for rebuttal, but obviously I want to answer whatever questions the Court has. The issue in this case is really whether this Court should second-guess the Labor Management Committee's decision that Wawock's claims were arbitrable under the party's collective bargaining agreement. And I want to start by briefly discussing the limited scope of review that this Court generally applies to labor arbitration awards. This Court gives virtually unparalleled deference to the decisions of labor arbitrators. And as the Supreme Court stated in the Major League Baseball case, the question in reviewing a labor arbitration award is if the arbitrator is even arguably construing or applying the contract and he had authority to decide the issue before him, then the Court must affirm the award even if the Court is convinced that the arbitrator made serious legal error. And as this Court stated in the Hawaii Teamsters case, the question is when you're reviewing an arbitration award from a labor arbitrator, this Court asks whether the labor arbitrators interpreted the contract, not whether they interpreted it correctly. And here there's no question that the Labor Management Committee had authority to decide whether or not Wawock's claims were arbitrable and that they interpreted the contract, the party's collective bargaining agreement, to cover Wawock's claims. Did the Labor Management Committee, were they aware of the right case? The plaintiffs had submitted a letter to the Labor Management Committee that brought right to their terms. And is it your view that they ignored right or just because they thought the intent and practice overruled the right decision? Well, I don't know if it overruled the right decision, but that it made right not directly or clearly applicable to preclude arbitration of Wawock's claims. If, and I'm just speaking arguendo here, if we were to interpret right to the effect that history and intent cannot provide clear and unmistakable waivers as right requires, then you lose, right? Well, again, I don't think so, Your Honor. And the reason, and I have a few reasons for that. You spoke about the history and the intent of the parties. But there's a few different questions. The question of whether, for example, Wright and 14 Penn Plaza apply to labor code claims is a question that has not been addressed by any binding authority. So your position is that right does not necessarily apply to labor violations? Well, I will read this court in the Powell decision defined right this way. And I understand Powell is an unpublished decision, so it's not precedential, but it's relied on by the plaintiffs extensively. It says, in interpreting right, the court said, we will not interpret a collective bargaining agreement to waive an individual employee's right to litigate statutory discrimination claims unless the CBA waiver explicitly incorporates statutory anti-discrimination requirements. But discrimination claims are very different than labor code claims, than wage and hour claims. And if you look at Wright, and particularly in 14 Penn Plaza where you have a majority and a dissent, and you look at the dispute between the majority and dissent in that case, turned largely on, and the dispute is about whether or not the union can waive the judicial forum for anti-discrimination claims. And the dispute turns on the specific anti-discrimination statutes in that case. They were not considering labor code violations. And I will note that in wage and hour cases, the California labor code allows the collective bargaining agreement to trump the labor code sometimes. And so the labor code sort of sets a standard and then says, but if the parties have a collective bargaining agreement, this standard doesn't exist. I want to be sure we're talking about the same thing here. The Wright case I'm talking about is a United States Supreme Court case. That's correct. And it is published. Well, okay. I was reading from the Powell decision of this court interpreting the Wright decision. Of course, Wright is published. I was asking a question about whether the labor management board here was aware of the United States Supreme Court case of Wright. And that question is absolutely yes. Okay. They knew that. They knew that. Just to clarify what I was talking about is, what is the scope of Wright and 14 Penn Plaza? In order to vacate the award under a manifest disregard of federal law standard, which, by the way, I think the real standard here is the one that applies to labor arbitration awards, which is an even narrower scope of review. But if we step into the manifest disregard of the law standard, the question is, is there an explicit, well-defined, and clearly applicable law that was ignored by the Labor Management Committee? And so we have to ask ourselves, what is the scope of Wright and 14 Penn Plaza? So your view is that if the Supreme Court of the United States has handed down an opinion and it hasn't been interpreted by a court of appeal or another Supreme Court opinion, that an arbitration body is free to interpret it in whatever way it wishes and it would not be bound by it in any other way? Interpreting the law is not ignoring the law, Your Honor. I think that's right. Arbitrators are empowered to make legal mistakes, even, as this court said in the White Teamsters case, serious legal mistakes. Do you agree that they made a legal mistake here? Not at all, Your Honor. I think in this case ---- Well, they didn't explain themselves. Well, they explained their interpretation. I mean, how do we go that way and say, oh, if they'd said we're distinguishing Wright because this is a wage claim and Wright involved discrimination claims, you know, I'd spot your argument. But I didn't see Wright anywhere in their decision. Well, I think a couple answers to that question, Your Honor. You have to look at, in a collective bargain context, the parties agree to have industry practitioners, the representative of the union and the representative of management, adjudicate their claims. They're not former lawyers. They're not former judges where you would expect their opinion to bear the earmarks of a judicial opinion. But, of course, arbitrators are not even required to provide written justifications for their rules. And they can't manifestly disregard the law. It's settled that for a manifest disregard, they have to recognize the applicable law, which was tendered to them by the petitioner, and then they have to ignore well-defined, explicit and clearly applicable law. And is it too much to ask that even a lay board would explain why they think the United States Supreme Court case law is not applicable? Well, I think you have to ‑‑ it may or may not be too much to ask, but the question is, is that grounds for vacating an award? And in order to vacate the award, the court must find that the law is well-defined, explicit and clearly applicable. And my point is that the law here just simply isn't. So an arbitrator is not required to provide justification. In this case, the arbitrators did provide some justification for its award. And we don't assume ‑‑ What do you think the best case, then, would ‑‑ for that proposition would be that Wright is distinguishable? I think it's distinguishable on three grounds. What case, U.S. Supreme Court or circuit case, would you point to that would bolster the Labor Committee's interpretation? Well, so let me walk through the three points, and then I'll cite the cases. But the primary assertion is that there's no case law. Well, this is better if you cite the case first, but you do it the way you want to. For each proposition. Because there are three different propositions here, Your Honor. The first one is about the historic practices and whether they can meet the clear and unmistakable standards set forth by Wright and 14 Pumplaza. And I will point the court to the Mammott case that is the Ninth Circuit decision and the Hawaii Teamsters case. Mammott says that historic practice can provide clear and convincing evidence of an agreement to arbitrate arbitrability. But it's still the clear and unmistakable standard. Hawaii Teamsters says that the party's historic practices become part of the governing contract. As if it was an explicit term. That there is binding on the labor arbitrators as if this contract was explicit. And so the historic practices there, those cases bolster the point that Wright and 14 Pumplaza do not clearly apply to preclude arbitration of Waywalk's claims. The second point would be a labor code. This is labor code violations are very different than the statutory anti-discrimination claims brought in 14 Pumplaza and Wright. And while there's not a case that explicitly says, well, labor code claims that Wright and 14 Pumplaza don't apply to labor code claims, the point is that there's no clearly applicable law that says Wright and 14 Pumplaza do apply to those claims. And so the Labor Management Committee cannot be accused of ignoring a law that doesn't exist. I gather your response to my colleagues is that even if you're a labor law scholar and you look at Wright, it just doesn't apply here. They don't even need to worry about it. Is that what you're saying? I think that's right, Your Honor. That Wright and 14 Pumplaza, they can look. Now, whether this court would agree with that or not is not the question. Because this court, the labor arbitrators are able to make legal error. But they're allowed to look at that and say, look, those cases were in a different context. And they're not, therefore, clearly applicable to the context before us. So I know your position that it doesn't apply. But let's just say that as a matter of law that it clearly did apply, but the labor management team said, you know, this just doesn't apply. And that's to say they're just flat out wrong. Are they still protected? If they looked at Wright and 14 Pumplaza and they made an interpretation of those cases that they didn't apply, even if this court thinks that interpretation is wrong, the Labor Management Committee's decision is what the parties bargained for, clearly and explicitly in the contract. And so this court cannot vacate an award based on legal error, even serious error, on the face of an award. It has to be, you know, that they looked at the law, they knew it applied, and they said, ah, we don't want to follow that law. What if there had been, say, a district court declaratory relief action asking the district court to tell this Labor Management Committee that Wright applies? Would they then still be free to ignore what the district court said about the meaning of Wright? Well, I think the answer to that question would be we would argue that the court shouldn't decide that question. That question should be before the arbitrator. In other words, if somebody said, in this case it really does apply, can they ignore that? But if there were, like, law of the case, if there was some previous law of the case. There's actually a dispute. I mean, there's a case in the Ninth Circuit, and I'm blanking on it. It's one of the cases cited in our briefs, and I can't remember which one, where the question was raised, is an arbitrator bound to collateral estoppel in the previous case? And the court didn't really answer that question. It deferred to the arbitrator's decision on that question. So even on that question, whether or not they would be bound by law of the case would ultimately be a question put to the Labor Management Committee. So basically the Labor Management team, in your view, is like philosopher kings in Greece, right? They can make it up and do whatever they want. Well, I think that's not true, Your Honor. They are arbitrators that have experience with industry practice. Absolute power. They can decide what the law is, and they can apply it however they want. They can interpret and apply the law. And even if they make error in doing so, they're not subject to reversal. Okay. They're philosopher kings. Well, the parties agreed to appoint them as the interpreters of the law. And I want to make one more. You know, Wright was all matters are covered. The court said that's not specific enough here. It's all grievances are covered. You know, that seems like a pretty close parallel. Certainly that was important to the district court here, that the breadth of the provision still needed some additional specificity to waive statutory claims. Well, so there are a couple of responses. That seems like a pretty close parallel to Wright. A couple of responses. The Wright, remember Wright, all said that while that language was ambiguous, it was really the ambiguity created in Wright was based on that language that said anything outside the contract is not in the contract. So any historical practices, anything like that did not become part of the contract. And so by saying all grievances and disputes, the court said any clarity that that might have had was denied clarity by this further language that is absent from our collective bargaining agreement. Well, my second point. Do you want to save any of your time? It's up to you, but it's. I will save a minute of my time. Okay, great. Good morning, Your Honors. Kai Polenko for Plaintiff Appellee Richard Waywalk. Your Honors, what we have here is a labor management committee that did an end run around Wright by converting Mr. Waywalk's statutory claims into contractual claims. We know that they ignored the Wright standard because when you look at the labor management committee's arbitrability determination, they tell us the standard that they did apply. And that standard was one that they created on their own. It asked whether the wage claims for time spent in training are essentially claims for unpaid hours worked under the CBA. Why isn't that arguably construing the language of the collective bargaining agreement? And, you know, I mean, they don't say Wright, but the inference is that they've distinguished Wright because these are wage claims and Wright involve discrimination claims. Well, I'm not sure you can make that inference from this record. I understand counsel says that's their position. I think I read somewhere that the deference to arbitrators is maybe not quite philosopher kings, but about the whitest known to man. Right. But they cannot ignore or manifestly disregard controlling law. Wright is a U.S. Supreme Court case. It says that a waiver of a judicial forum for statutory claims must be clear and unmistakable. In Payette, the Supreme Court said that the standard requires an explicit statement saying that statutory claims are arbitrable. What role, if any, does the fact that you presented Wright and argued Wright to the committee play in this? In other words, if they hadn't known about Wright, would they have been within their proper bounds to decide the way they did? Well, perhaps, Your Honor, but we did notify them. No, no, I understand. I'm just trying to understand the mechanism here. In other words, I gather it's your position that the fact that you raised this issue, made such a point of this issue, changes the dynamic a lot. If they didn't know about it, then that might be different, because there's not a clear manifestation of ignoring the law. But here they did know, and that's important in our calculation. Is that right? Correct, Your Honor. Your Honor, I'd point the court to the Second Circuit's decision in Duferco. It's cited on page 16 of our brief, where the court says, in determining an arbitrator's awareness of the law, courts impute to the arbitrator knowledge of governing law identified by the parties to the arbitration. So knowledge of Wright is imputed to the Labor Management Committee. It's undisputed that they received our letter brief. And so knowledge is there. The district court's finding of fact that the Labor Management Committee was made aware of the case law and then ignored it is a factual finding that's reviewed under the clearly erroneous standard. And even if that's a mixed question of law and fact, we believe it's still reviewed under the clearly erroneous standard because it's essentially a factual inquiry. And I'd point the court to the Ninth Circuit's en banc decision in United States v. Hinkson for that proposition. So that part of the district court's finding is reviewed for clear error. I don't think that opposing counsel has made the case that the district court committed clear error in its finding of fact. How much specificity is commanded by Wright? Well, we know it requires an explicit statement. We know we don't have that here. The cases seem to suggest that you have to somehow explicitly say that the arbitrator has the power to decide statutory claims. The Second Circuit has, I believe, said that you actually have to explicitly list the statutes. Sixth Circuit, I think, has said similar language. This circuit has not issued a published decision yet. It has the Powell decision, which is unpublished. But all of the other circuits to have considered this, to consider the Wright case, have required an explicit statement. And they've come out and said broad language that may be in the individual employment context, not the collective bargaining context, that may be sufficient to waive a statutory right in that context, is not sufficient to satisfy the Wright standard. What's the point of, you know, the magic words, you know, statutory claims? Here it's all grievances. If the CBA said all grievances and statutory claims are arbitrable, is that good enough? Perhaps if it said statutory claims, yes. But it doesn't. And I think, you know, the point is one. But it does clearly refer to wage claims. And this CBA has pages and pages of formulas and tools listed and things to do. Right, but so does every CBA. And all the wages and compensation. You're making a wage and compensation argument. It seems pointless to add additional level there, doesn't it? I would respond by just saying every CBA covers wages. Every CBA covers the terms and conditions of employment. Exactly. Then there would be no point, right? But Wright does require that. And I think the point is so that employees, when they vote on whether they want this contract to apply to them, are aware that they're waiving a statutory right at that point. It just seems like really a form over substance argument. Substantively, the CBAs, you know, they exist for wages and compensation. In Wright, maybe you're thinking about Title VII and the Americans with Disability Act, you know, these federal discrimination claims. You know, that seems that's a far, far afield from a wage-based claim like you have here. And isn't that at least an arguably plausible way to construe Wright that this committee could have engaged in? I don't think they did construe Wright, so I would answer no to that. But I would point the Court to the Seventh Circuit's decision. Well, they might have stumbled on the truth despite themselves. I would point the Court to the Seventh Circuit's decision in Jonitas, which was a FLSA collective action asserting unpaid overtime. And I believe it was Judge Posner who said the CBA said any dispute as to working conditions is arbitrable. And Judge Posner said that does not satisfy Wright because Wright requires an explicit statement that statutory claims are arbitrable. And that is no different than the language that was at issue before the Supreme Court in Wright. So I don't think you can distinguish it that way. But my point is the Labor Management Committee didn't even bother to look at it. They applied a different standard altogether. Let's see if I have any other further points. The Monmouth decision that the Ninth Circuit issued that opposing counsel relies on, that was in a completely different context. That was an allocation agreement where the issue was did the parties agree to arbitrate the issue of arbitrability. The Wright standard was not at issue. What opposing counsel is attempting to do is to say because the words clear and unmistakable were used in that context, a completely different context, that definition should be grafted on Wright's definition of clear and unmistakable. If the committee had said we've looked at Wright, that deals with discrimination. This case doesn't. We think it's distinguishable. That would have been okay, wouldn't it? Perhaps. Perhaps. But they didn't do that. So you're saying that the fact that they just ignored it for purposes of their response is damning to what they did? Well, that, but also that we know they applied a different standard because we could look at the language that they used. And they asked a different question. They did not ask whether the CBA contains an explicit statement that statutory claims are arbitrable. They asked whether the claims alleged are essentially unpaid claims under the CBA. They converted statutory claims to contractual claims. We don't have any contractual claims at issue in our lawsuit. That was error. So it's not just the fact that they didn't discuss Wright. It's also the fact that they applied a standard that was not Wright's clear and unmistakable standard. So Wright was not Wright. I'm sorry? No, I'm joking. Okay. Correct. So the Hawaii Teamsters case quickly, and then unless there's further questions, I'll submit. This court in Hawaii Teamsters said that past practice is part of the CBA. But that's not the dispositive issue here. The issue is can past practice constitute an explicit statement to arbitrate statutory claims? And this court's precedents say that past practice at best is an implied term of the CBA, not an explicit term. And we know from Wright that what courts cannot do is infer an implied term to arbitrate statutory claims from general language, such as all grievances or questions of dispute. So we don't think Hawaii Teamsters helps opposing counsel here. Court, any further questions for me? No. Thank you very much. Thank you. So, counsel, you have a little bit of time. We'll give you a minute and a half altogether. We can change the clock there. Thank you, Your Honor. Very quickly. Claims counsel cited no case saying that historic practices cannot satisfy the standard of Wright. There's no case. The Labor Management Committee cannot be accused of ignoring a law that doesn't exist. They say that it must be explicit, but no case has said that historic practices can't satisfy the clear and unmistakable standard. No case says it can either, right? Right. It's an open dispute. Okay. So it's open. It's an open dispute, and the parties contracted for the Labor Management Committee to resolve that dispute. No case, no binding case cited that Wright applies to the labor code claims. It brings to the court's attention Jonitas. Jonitas was not even brought to the attention of the Labor Management Committee. Again, how can the Labor Management Committee be accused of ignoring law, even non-binding law like Jonitas, when it wasn't brought to their attention? Finally, I want to step back and look at Wright and 14 Penn Plaza apply when a neutral court, who is not party to the collective bargaining agreement, is tasked with its interpretation. And the court says, because we don't know what the party's intended, all we have is the agreement, we're going to require some clear and unmistakable statement. But the question here is, you have, the parties have agreed to have the very parties, the very persons who negotiated and signed this agreement, they come together, they're tasked with its interpretation, they come together and say, based on their historic practice of arbitrating every one of these types of claims over the uninterrupted history of this collective bargaining agreement and the decision in this case, they say, these claims are arbitrable. And plaintiff's counsel comes in and says, well, maybe you think you agreed to it. Counsel, you're over your time. Wrap it up. Maybe you think you agreed to arbitrate these types of claims. Maybe you agree that you did. But, in fact, you didn't use the right language. And that's not the law. We have your argument. We thank both counsel for their arguments. We appreciate it very much. The case just argued is submitted.
judges: Tymkovich, Farris, M. Smith